IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BIOMIN AMERICA, INC.,

  Plaintiff,

  v.

LESAFFRE YEAST CORPORATION,
BRETT BELL, and ANNA CROCKETT,

  Defendants.

Case No. 2:20-cv-02109-HLT

## MEMORANDUM AND ORDER

  Plaintiff Biomin America, Inc. ("Biomin") brings this action against Defendant Lesaffre Yeast Corporation ("Lesaffre") and two former Biomin employees—Defendants Brett Bell and Anna Crockett—who now work for Lesaffre. Biomin asserts a claim for misappropriation of trade secrets under the federal Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 ("DTSA"), and a slew of state law claims, including breach of contract, tortious interference, civil conspiracy, and unfair competition. The gravamen of this action is that Bell and Crockett misappropriated trade secrets and violated restrictive covenants contained within their Biomin employment agreements.

  Defendants move to dismiss this action. Doc. 47. Defendants principally argue that Biomin fails to state a DTSA misappropriation claim and, because this claim is the jurisdictional hook, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. As discussed more fully below, the Court grants Defendants' motion. The Court agrees that Biomin fails to state a DTSA claim and therefore dismisses that claim without prejudice under Rule 12(b)(6). Given this holding, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and thus dismisses those claims without prejudice for lack of subject matter jurisdiction under Rule 12(b)(1).

**I.     BACKGROUND[1]**

    **A.     The Parties**

The following is a high-level summary of the allegations in this case. Additional facts and allegations are incorporated into the Court's analysis as necessary. Biomin is an animal health and nutrition company based in Overland Park, Kansas. Doc. 36 ¶¶ 6, 14. Biomin develops and delivers feed additives for livestock—including poultry, swine, ruminants, and aquaculture—and is considered a market leader in mycotoxin risk management products and solutions as well as salmonella control products and solutions. *Id.* at ¶¶ 14-15. Biomin's products include Biofix®, a next generation feed additive proven to counteract mycotoxins, and Poultry Star®, which, among other things, promotes beneficial gut microbiota and reduces bacteria like salmonella and E. coli in multiple species of poultry. *Id.* at ¶ 17.

Lesaffre, meanwhile, is based in Wisconsin and also operates in the animal nutrition and livestock feed additive solution market. *Id.* at ¶¶ 8, 20. Like Biomin, Lesaffre's Phileo Division produces and markets animal feed additive products aimed to reduce and remove mycotoxins and pathogens like salmonella and E. Coli. *Id.* at ¶¶ 21, 23. Although the two companies employ different technological strategies for reducing or removing mycotoxins and pathogens in livestock, Lesaffre and Biomin market their products to the same customers, and, indeed, those customers view Lesaffre and Biomin as industry competitors. *Id.* at ¶¶ 24, 44. At least two of Lesaffre's products, SafWall® and SafMannan®, directly compete with Biofix® and Poultry Star®. *Id.* at ¶ 21-22.

---

[1]    This background accepts as true Biomin's well-pleaded factual allegations and construes those allegations in the light most favorable to Biomin.

Both Bell and Crockett are former Biomin employees who are currently employed by Lesaffre. *Id.* at ¶¶ 50, 56, 69-70. For more than five years, Bell was Sales Director of Biomin's Ruminant and Poultry Divisions. *Id.* at ¶ 50. In this position, Bell was responsible for and oversaw Biomin's entire ruminant sales team in every state of the United States and, as of May 2018, also assumed responsibility of Biomin's nationwide poultry sales team. *Id.* at ¶ 51. Crockett, meanwhile, was a Key Account Manager for Biomin's Swine and Poultry Divisions, wherein she reported directly to Bell (until his resignation) and was assigned Biomin's key customer accounts, meeting with customers in a total of 16 states (including Kansas) and Canada. *Id.* at ¶¶ 56-57. By virtue of their employment with Biomin, both Bell and Crockett had access to, and acquired knowledge of, Biomin's confidential and trade secret information. *Id.* at ¶ 62.

### B.  Bell and Crockett's Departure for Lesaffre

On or about July 5, 2019, Bell voluntarily resigned from his employment with Biomin to accept a position as the North American Director of Lesaffre's Phileo Division. *Id.* at ¶¶ 66, 69. In his position with Lesaffre, Bell is responsible for and oversees the marketing and sales efforts of Lesaffre's Phileo products and solutions (including SafMannan® and SafWall®) in the United States and Canada. *Id.* at ¶ 69. Approximately six months after Bell's departure, Crockett followed suit, resigning from Biomin to accept a position as a Regional Sales Manager with Lesaffre's Phileo Division. *Id.* at ¶ 70. Crockett's resignation from Biomin was effective January 10, 2020. *Id.* In connection with her employment with Lesaffre, Crockett markets Lesaffre's Phileo products and solutions (again, including SafMannan® and SafWall®) to customers and prospective customers in the same states in which she formerly marketed Biomin's products. *Id.* at ¶ 72. Therefore, in their new positions with Lesaffre—which, again, is a direct competitor of Biomin—

Bell and Crockett are performing roles substantially similar to the roles they performed at Biomin. *Id.* at ¶ 2.

### C. The Dispute

After Crockett resigned and left to join Lesaffre, Biomin began to suspect Bell and Crockett were violating certain restrictive covenants contained within Biomin's Proprietary Information, Confidentiality, Non-Solicitation, and Non-Competition Agreement, which both Bell and Crockett executed at the inception of their employment with Biomin (collectively, the "Employment Agreements").[2] *See* Docs. 36-1, 36-2. Specifically, Biomin suspected that Bell and Crockett had solicited Biomin's employees and customers to join Lesaffre, and also that Bell and Crockett were using Biomin's confidential information and trade secrets to market Lesaffre's competitive products. Doc. 36 ¶¶ 73-80.

Biomin accordingly sent cease-and-desist letters to Bell, Crockett, and Lesaffre on or about January 10, 2020, requesting (among other things) that they provide written assurances that Bell and Crockett were in compliance with the Employment Agreements and that Lesaffre had taken steps to ensure that neither Bell nor Crockett was using or disclosing Biomin's confidential information and trade secrets or otherwise violating the Employment Agreements. *Id.* at ¶ 83. The discussions between the parties and counsel were ultimately unsuccessful, and, on March 6, 2020, Biomin sued Lesaffre, Bell, and Crockett. *Id.* at ¶ 84. Three days after filing its initial complaint, Biomin also filed a motion for a temporary restraining order, which the Court denied on

---

[2] The pertinent provisions are nearly identical in both Employment Agreements—the only difference being that the Confidentiality Provision in Bell's Employment Agreement defines "trade secrets" under Missouri law and Crockett's defines "trade secrets" under Texas law. *See* Docs. 36-1 at 1, 36-2 at 1. But this distinction does not come into play in the Court's holding. The Court also notes that Texas law appears to govern both Employment Agreements. *See* Docs. 36-1 at 4, 36-2 at 4.

March 30, 2020. On April 22, 2020, Biomin filed its first amended verified complaint.[3] Doc. 36. Defendants now move to dismiss the amended complaint under Rules 12(b)(6) and 12(b)(1). Doc. 47.

## II.     ANALYSIS

### A.     DTSA Claim

As discussed, the bulk of the briefing pertains to Biomin's DTSA claim (Count V). Defendants argue, at a general level, that Biomin's DTSA claim fails under Rule 12(b)(6) because it is vague, conclusory, and speculative. For the following reasons, the Court agrees.

#### 1.     Standard

Courts will dismiss a cause of action under Rule 12(b)(6) in two circumstances. First, dismissal is warranted where an issue of law precludes recovery. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Second, dismissal is likewise appropriate where the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if its factual allegations allow a court to draw the reasonable inference that the opposing party is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts must accept well-pleaded factual allegations as true, this obligation does not extend to legal conclusions or to "threadbare recitals of the elements of the cause of action." *Id.* at 678-79.

---

[3] The amended complaint asserts claims for: injunctive relief (Count I against Bell and Count II against Crockett); breach of contract (Count III against Bell and Count IV against Crockett); misappropriation of trade secrets under the DTSA (Count V against all Defendants); tortious interference (Count VI against Lesaffre and Count IX against Bell); civil conspiracy (Count VII against all Defendants); and unfair competition (Count VIII against all Defendants). *See* Doc. 36.

**2.    Analysis**

To establish a claim for trade secret misappropriation under the DTSA, a plaintiff must show: (1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or should have known the trade secret was acquired by improper means. *See API Ams., Inc. v. Miller*, 380 F. Supp. 3d 1141, 1148 (D. Kan. 2019); *Freebird Commc'ns, Inc. Profit Sharing Plan v. Roberts*, 2019 WL 5964583, at *4 (D. Kan. 2019). The parties devote a substantial portion of the briefing to debating whether Biomin has adequately alleged the existence of the specific trade secrets it claims were misappropriated by Defendants. But the Court need not resolve this issue because, even assuming Biomin has sufficiently alleged the existence of a trade secret, Biomin's misappropriation claim nonetheless fails under the second element.

This deficiency is illustrated by the observation that—of the complaint's 169 paragraphs, spanning 48 total pages—only four paragraphs (paragraphs 79, 80, 141, and 142) actually relate to Defendants' alleged use or disclosure of Biomin's purported trade secrets. And, once the Court has disregarded bare legal conclusions (which is it bound to do), the actual allegations in those four paragraphs can be pared down to essentially a <u>single fact</u>, pertaining only to Bell. This specific allegation is discussed in the forthcoming analysis, but, put simply, on such thin allegations Biomin fails to plausibly allege that Bell, Crockett, or Lesaffre used or disclosed any of its purported trade secrets.[4] This is fatal to its DTSA misappropriation claim. Having addressed this overarching issue, the Court proceeds to its analysis of the allegations on this element as against each defendant.

---

[4]    The Court notes that Biomin does not appear to allege that Defendants <u>acquired</u> its trade secrets without consent so as to meet the second element of its DTSA claim. Rather, Biomin appears only to allege an improper use or disclosure of its trade secrets in this case. Therefore, the Court analyzes only whether Biomin has plausibly alleged use or disclosure of its trade secrets by Defendants.

### a. Bell

Biomin's allegations regarding Bell's alleged use or disclosure of its trade secrets are found in paragraphs 79 and 141 of the amended complaint, the latter of which is not set forth in the "allegations" portion of the amended complaint, but, rather, is located within the actual misappropriation count itself. Paragraph 79 reads:

> In concert with Defendant Lesaffre, Defendant Bell has used Plaintiff's Confidential Information and trade secrets to solicit, directly and indirectly, customers of Plaintiff with whom he dealt by reason of his former employment with Plaintiff and, among other things, Defendant Bell represented to one or more such customers, including Cooperative Feed Dealers, that one or more of Defendant Lesaffre's products can bind zearalenone, a mycotoxin, at a price point lower than Plaintiff's mycotoxin risk-management products previously sold to Cooperative Feed Dealers for use in ruminant animals. Defendant Bell's solicitation of Cooperative Feed Dealers reveals that he misused, among other things, Plaintiff's proprietary customer-specific mycotoxin risk identification and assessment, customer-specific pricing and customer contact information for the "decision-maker"/purchaser.

Doc. 36 ¶ 79. Paragraph 141 essentially repeats these allegations, alleging that Bell, "on behalf of" Lesaffre:

> [U]sed his knowledge of Plaintiff's Confidential Information pertaining to Cooperative Feed Dealers' product positioning and Plaintiff's customized pricing of mycotoxin risk-management and pathogenic bacteria-control products and solutions to Cooperative Feed Dealers, to represent to Cooperative Feed Dealers' Director of Nutrition that Lesaffre's product, SafWall®, can bind zearalenone, a mycotoxin, at a price point lower than the mycotoxin risk-management products that Cooperative Feed Dealers has a history of purchasing from Biomin for use in ruminant animals.

*Id.* at ¶ 141.

Neither of these allegations plausibly alleges use or disclosure of a Biomin trade secret by Bell. Both paragraphs follow the same calculus: a conclusory statement that Bell has "used" Biomin's trade secrets to solicit Biomin customers, followed by details of an encounter between

7

Bell and a representative of Cooperative Feed Dealers ("CFD"), a Biomin client with whom Bell dealt during his former employment. The first component—the conclusory statements regarding use—amounts to a legal conclusion that the Court need not accept as true. *See Iqbal*, 556 U.S. at 678-79 (under Rule 12(b)(6), although courts must accept as true the complaint's well-pleaded factual allegations, this obligation does not extend to legal conclusions).

Putting aside that conclusion, the Court is thus left with the second component, which is Biomin's allegation that Bell told CFD that Lesaffre's products (including SafWall®) "can bind zearalenone, a mycotoxin, at a price point lower than [Biomin's] mycotoxin risk-management products." Doc. 36 ¶¶ 79, 141. In other words, the only concrete allegation related to Bell's use or disclosure of Biomin's trade secrets is Bell's alleged statement that—boiled down—amounts to a claim that Lesaffre's products can do the same thing as Biomin's products at a cheaper price. But accepting such a statement as "use" of a trade secret would potentially convert every case where an employee leaves to take a job with an alleged competitor and then offers to sell their new product at a lower price to a potential trade secret misappropriation case. This is an untenable result.[5]

In sum, although Biomin may allege that Bell possesses knowledge of its purported trade secrets by reason of his former employment, Biomin fails to plausibly allege any use or disclosure of those trade secrets by Bell. Biomin therefore fails to state a claim under the DTSA as against Bell.

---

[5] In its opposition, Biomin argues that, because Bell took a substantially similar position with a direct competitor, it is inevitable that Bell would use or disclose its trade secrets in that new position. But this argument is undercut by the facts in the amended complaint, namely that Biomin waited six months to raise the issue with Bell and Lesaffre—and another two months after that to file this lawsuit. If Biomin had been concerned that Bell was misappropriating its trade secrets simply by virtue of his new position with Lesaffre, common sense dictates that Biomin would not have waited that length of time to raise this issue with Bell, Lesaffre, and the courts. Thus, this argument is curious and, even if pleaded, does not push the claim from "possible" to "plausible" on these facts.

### b. Crockett

Biomin's allegations regarding Crockett's alleged use of its trade secrets are even more sparse than its allegations against Bell. The allegations against Crockett, contained in a single paragraph of the amended complaint, read:

> In concert with Defendant Lesaffre, Defendant Crockett has used Plaintiff's Confidential Information and trade secrets to solicit, directly and indirectly, customers of Plaintiff with whom she dealt by reason of her former employment with Plaintiff, specifically including Mountaire Farms. Defendant Crockett's solicitation of Mountaire Farms reveals that she misused, among other things, Plaintiff's proprietary customer-specific risk identification and assessment and customer contact information for the Purchasing Manager.

Doc. 36 ¶ 80.

This paragraph contains no facts and, rather, is entirely comprised of legal conclusions (which, again, the Court need not accept as true, *see Iqbal*, 556 U.S. at 678-79). Although Biomin identifies a client, Mountaire Farms, which it alleges Crockett solicited using Biomin's trade secrets, Biomin does not allege any <u>facts</u> regarding Crockett's solicitation of that client. For example, Biomin does not allege facts regarding who Crockett spoke with at Mountaire Farms, what Crockett said during that encounter, or the nature of her use or "misuse" of Biomin's "proprietary customer-specific risk identification and assessment and customer contact information for the Purchasing Manager." *See* Doc. 36 ¶ 80. The allegations as to Crockett are completely conclusory, threadbare, and contain no facts, and, as was the case with Bell, thus fail to adequately allege that Crockett used or disclosed Biomin's trade secrets. Indeed, Biomin's allegations against Crockett follow much the same formula as its allegations against Bell—the difference being that the allegations against Crockett are <u>entirely</u> comprised of legal conclusions and do not include any facts (no matter how thin) regarding her use of trade secrets to solicit a

9

Biomin customer. For all of these reasons, Biomin fails to state a DTSA claim as against Crockett.[6] *See Camick v. Holladay*, 2018 WL 1523099, at *6 (D. Kan. 2018) ("The absence of well-pled factual allegations and the assertion of only legal conclusions is fatal to Plaintiff's [DTSA] claim.").

### c. Lesaffre

Finally, the Court addresses Biomin's allegations as to Lesaffre. The allegations against Lesaffre include that Lesaffre acted "in concert with" Bell and Crockett to misappropriate Biomin's trade secrets and that, "on information and belief," Lesaffre "has used Plaintiff's Confidential Information and trade secrets to market and sell competing products and solutions to customers including, without limitation, customers of Plaintiff with whom Defendants Bell and Crockett previously dealt by reason of their former employment with Plaintiff including, but not limited to, Cooperative Feed Dealers, Mountaire Farms and Westway Feed Products." Doc. 36 ¶¶ 79, 80, 142. In support of its contention that it has adequately pleaded misappropriation by Lesaffre, Biomin contends that Bell's and Crockett's alleged actions can be imputed to Lesaffre because Lesaffre knew or should have known that Biomin's trade secrets were being misappropriated.

First, as an initial matter, the Court disregards any threadbare legal conclusions regarding Lesaffre's alleged "use" of Biomin's trade secrets to market and sell its products. Alleging mere "use" in a conclusory manner is insufficient to state a claim under the DTSA. *See Camick*, 2018

---

[6] The Court also notes that the simple fact of Crockett's existing relationship with Mountaire Farms (with whom she dealt during her former employment at Biomin) is not a trade secret. *See, e.g.*, *Degussa Admixtures, Inc. v. Burnett*, 471 F. Supp. 2d 848, 855 (W.D. Mich. 2007) (holding that an employee's personal relationships with customers are not trade secrets); *Sw. Dealer Servs., Inc. v. Little*, 2011 WL 3274554, at *4 (W.D. Mo. 2011) (although relationships "may justify enforcement of a covenant not to compete," they "do not qualify as trade secrets").

10

WL 1523099, at *6 (D. Kan. 2018); *see also Iqbal*, 556 U.S. at 678-79 (the court need not accept legal conclusions as true).

Second, although Biomin is correct that there are some circumstances where an employee's misappropriation can be imputed onto his or her new employer, Biomin fails to plead any facts to support this allegation here. Although Biomin vaguely alleges that Lesaffre acted "in concert with" Bell and Crockett to misappropriate Biomin's trade secrets, this allegation is conclusory and not supported by any facts that someone at Lesaffre <u>knew</u>—or <u>should have known</u>—about any alleged misappropriation or about any alleged "use" by Bell and Crockett.[7] These allegations are insufficient to state a claim against Lesaffre. *See Wright Med. Tech., Inc. v. Paragon 28, Inc.*, 2019 WL 4751807, at *4 (D. Colo. 2019) (holding that the plaintiff failed to state a DTSA claim against its former employees' new employer because its allegations that the new employer "was aware" of the former employees' misappropriation and "actively participated in, substantially assisted, or endorsed" the former employees' use of trade secret information were "conclusory and not supported by factual averments"); *Ciena Commc'ns, Inc. v. Nachazel*, 2010 WL 3489915, at *4 (D. Colo. 2010) (finding the plaintiff's allegation that the defendant "misappropriated, or threaten[ed] to misappropriate, [the plaintiff's] trade secrets for the purpose of using and exploiting such information" was "entirely conclusory" and insufficient to state a claim). Without any specific factual averments showing Lesaffre was aware of the alleged misappropriation, the Court

---

[7] Biomin argues that Lesaffre had notice based on the cease-and-desist letter Biomin sent to Lesaffre on January 10, 2020, enclosing copies of Bell and Crockett's Employment Agreements. Based on this letter, Biomin reasons that Lesaffre knew or should have known of the alleged misappropriation or use. But, aside from the lack of factual allegations, the Court questions whether this letter could possibly suffice to put Lesaffre on notice of the potential trade secret misappropriation or use. Indeed, the enclosed Employment Agreements defined "confidential information" as "information proprietary to [Biomin] and not generally known" and including such broad categories as "information relating to . . . any subject matter pertaining to the business of [Biomin]" and "any and all data and information relating to the business of Biomin." *See* Docs. 36-1 at 1, 36-2 at 1. Given this broad definition, which arguably includes the yearly cost of Biomin's janitorial services, the Court is hard pressed to imagine that this letter could give anyone sufficient notice of the alleged trade secret misappropriation or use that Biomin claims in this case.

11

will not "reflexively impute" any improper use or disclosure of Biomin's trade secrets onto Lesaffre.[8] *See Ciena*, 2010 WL 3489915, at *4.

In sum, Biomin fails to plausibly allege the second element of its DTSA misappropriation claim: that Defendants improperly used or disclosed Biomin's alleged trade secrets. The Court therefore dismisses Biomin's DTSA claim for failure to state a claim under Rule 12(b)(6). But the Court notes that—although recognizing that Biomin has already amended its complaint once—this dismissal is without prejudice due to the expedited nature in which this case has progressed.[9]

### B.   Remaining State Law Claims

In addition to the DTSA misappropriation claim, Biomin's amended complaint also asserts a number of state law claims. Doc. 36. The Court had original jurisdiction over the DTSA claim under federal question jurisdiction. *See* 28 U.S.C. § 1331. But the Court has now dismissed that federal claim. Under these circumstances, Defendants argue the Court should decline to exercise supplemental jurisdiction over the remaining state law claims and, rather, dismiss those claims for lack of subject matter jurisdiction under Rule 12(b)(1). The Court agrees.[10]

A district court has discretion to exercise supplemental jurisdiction over state law claims that derive from "a common nucleus of operative fact" as a pending federal claim. *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-65 (1997); *see also* 28 U.S.C. § 1367(a). In deciding

---

[8]   Regardless, as set forth above, the Court has already found that Biomin fails to plausibly allege any such improper use or disclosure of Biomin's trade secrets by Bell or Crockett. Thus, Biomin fails to plausibly allege any facts indicating that Lesaffre acted in concert with any use of alleged trade secrets.

[9]   The Court also notes that, to the extent it had reached a different decision and Biomin's misappropriation claim had survived dismissal, it seems that this claim would necessarily be narrowed to only those categories of trade secrets allegedly used or disclosed in this case and not the entire eleven-point list. *See* Doc. 36 ¶ 133. Stated differently, a party cannot allege a multitude of trade secrets, only allege misappropriation, use, or disclosure of a few, and then seek discovery on the entire list.

[10]  The Court also notes that, as Defendants point out in their reply brief, Biomin does not respond to Defendants' arguments against an exercise of supplemental jurisdiction or otherwise dispute that, in the event the DTSA claim fails, the Court need not go further in its analysis.

whether to exercise supplemental jurisdiction over state law claims, the district court should consider whether the values of judicial economy, convenience, and fairness would be served by retaining jurisdiction. *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013). A district court may decline supplemental jurisdiction when the claims over which it had original jurisdiction have been dismissed. *Exsum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138 (10th Cir. 2004); *see also Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (noting that "the most common response to a pretrial disposition of federal claims has been to dismiss the [remaining] state law claim or claims without prejudice").

The Court finds that the factors weigh against an exercise of supplemental jurisdiction here. Although there has been a flurry of activity in the short time this case has been pending, the proceedings remain at an early stage, with only limited discovery having been conducted. And, following dismissal of Biomin's DTSA claim, the remaining claims are purely state law claims. Moreover, it appears that the remaining state law claims would be subject to varying state laws. For example, given the Employment Agreements' choice-of-law provisions (*see* Docs. 36-1 at 4, 36-2 at 4), Texas law would appear to govern the breach of contract claims, while other claims may be subject to Kansas law or to the laws of states where the allegedly tortious acts took place. The Court does not discern any reason for it to attempt to analyze and interpret multiple states' laws when the only claim over which it had original jurisdiction has been dismissed. The values of judicial economy, convenience, and fairness would not be served by retaining jurisdiction under these circumstances.

Therefore, considering the various factors, the Court declines to exercise supplemental jurisdiction over Biomin's remaining state law claims. Those claims are dismissed without prejudice under Rule 12(b)(1) for lack of subject matter jurisdiction.

### III.     CONCLUSION

In sum, the Court finds that Biomin fails to plausibly allege the requisite "link" between Bell and Crockett's mere knowledge of Biomin's purported trade secrets (acquired during their former employment) and any improper use or disclosure of those trade secrets. In rendering this holding, the Court does not comment on the validity of any other claims in this lawsuit. But, because Biomin fails to state a claim for misappropriation under the DTSA, that claim must be dismissed under Rule 12(b)(6). And, in the absence of any federal claim, the Court finds that, under the circumstances, the remaining state law claims should also be dismissed without prejudice for lack of subject matter jurisdiction under Rule 12(b)(1).

THE COURT THEREFORE ORDERS that the Motion to Dismiss the Amended Complaint (Doc. 47) filed by Lesaffre, Bell, and Crockett is GRANTED. Biomin's federal claim for misappropriation of trade secrets under the DTSA is DIMISSED WITHOUT PREJUDICE under Rule 12(b)(6). Biomin's remaining claims are likewise DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction under Rule 12(b)(1).

THE COURT FURTHER ORDERS that the parties' Joint Motion to Set Preliminary Injunction Hearing (Doc. 51) is DENIED as MOOT.

IT IS SO ORDERED.

Dated: May 12, 2020                                  /s/  *Holly L. Teeter*
                                                                    HOLLY L. TEETER
                                                                    UNITED STATES DISTRICT JUDGE

14